1837.

Wendell
v.
Lewis.

</div>

---

### Wendell *vs.* Lewis and others.

Upon the hearing of an appeal from the decree of a vice chancellor, no other evidence can be received or read than that which was read upon the hearing before the vice chancellor. Neither party, therefore, before the hearing of the appeal, will be permitted to open the order to close the proofs in the cause for the purpose of taking further testimony.

If the decree of the vice chancellor is reversed, it seems the chancellor may, in his discretion, allow the respondent to introduce new testimony as to facts discovered subsequently to the hearing before the vice chancellor, before he proceeds to make a final decree upon such appeal.

Where the vice chancellor has decreed that real estate in the possession of the appellant belongs to the respondent, the chancellor will not order a portion of such estate to be sold, upon the application of the appellant pending the appeal, to pay the taxes and assessments thereon, contrary to the wishes of the respondent, and while the appellant is receiving the rents and profits of the estate.

THE complainant in this cause was the purchaser of cer- January 28. tain real estate in the city of Albany, under a judgment and execution against Stewart Lewis. And the object of this suit was to set aside several conveyances given on sales under prior judgments and executions, which the complainant alleged to be fraudulent as against him. The cause was heard upon pleadings and proofs, before the late vice chancellor of the fourth circuit. And he decreed the conveyances, under which the defendants claimed, to be fraudulent and void, and that the complainant was entitled to the premises in controversy, subject to certain liens thereon in favor of some of the defendants for monies advanced to pay off prior incumbrances, &c. And a reference was made to a master to ascertain the amount of such liens, and of the rents and profits of the premises received by the defendants. From this decree Juliet Lewis and two of the other defendants appealed to the chancellor. And the case now came be-

fore him upon an application by the appellants to be per-
mitted to take further testimony in the cause upon a point
connected with the question of fraud as to one of the judg-
ments under which they claimed; as to which point they
alleged that they neglected to take proof, previous to the
hearing before the vice chancellor, through mere inad-
vertence. The appellants also stated that the premises
were subject to heavy assessments, for improvements in
that part of the city of Albany where the greater part of
the property was situated, and that some portions of the
property had already been sold to pay such assessments.
They therefore asked for an order to sell so much of the
premises as might be necessary to discharge the taxes and
assessments on the whole premises and to redeem the
property which had already been sold. The appellants
also alleged that they were females, principally dependant
upon the property in controversy for their support, and that
their liens thereon were not less than thirty thousand dol-
lars; so that in any event, they would be entitled to a large
portion of the property, or of the money to be raised out of
the same. They therefore asked for the sale of a reasona-
ble proportion of the premises, for their support pending
the litigation.

*R. B. Bates & P. S. Henry*, for the appellants.

*Levi H. Palmer*, for the respondent.

THE CHANCELLOR. There is not any sufficient cause
shown for the neglect to produce the proof in relation to
the value of Stewart Lewis' property, which would author-
ize the opening of the order to close the proofs, in this stage
of the cause, even if the appellate court had jurisdiction to
rehear the case on new evidence which was not before the
vice chancellor. It appears, from the complainant's depo-
sitions, that he examined witnesses as to the value of Stew-
art Lewis' property at the time of giving the $80,000 judg-
ment to his mother which is charged to be fraudulent.
And if those witnesses did not state the value of the prop-
erty correctly, the defendants should then have introduced

other witnesses to prove its true value. It would be very unsafe to permit parties thus to avail themselves of testimony which might appear to be in their favor in one view of the case, and to contradict it afterwards by the testimony of other witnesses, when, by the decision of the court, they found it might have an important bearing against them in another view. Another and conclusive answer to this part of the application is, that it is now settled by the highest judicial tribunal in the state, that upon an appeal from a vice chancellor to the chancellor no other evidence can be received or read upon the hearing than that which was before the vice chancellor. While the case of *Mitchell* v. *Lenox and others* was pending before me upon an appeal from the vice chancellor of the first circuit, the respondents, upon a special application for that purpose, were permitted to prove two papers signed by the appellant, which had been discovered subsequent to the hearing before the vice chancellor, as exhibits *de bene esse;* the question as to their admissibility as evidence upon the appeal being reserved until the hearing. Those two exhibits, if admissible as evidence on the hearing of the appeal, were conclusive against the appellant upon the point on which the appeal was brought. When that case was finally heard before me, I intimated an opinion that this newly discovered evidence could not be read for the purpose of preventing a reversal of the decree of the vice chancellor, if that decree was erroneous upon the evidence which was before him; although the appellate court might not, perhaps, in such a case, consider itself bound, upon the reversal of the decree of the vice chancellor, to proceed and make a final decree in the cause upon the original evidence alone, when it was perfectly apparrent that injustice must be done to the respondents by such a proceeding. And I suggested that where the newly discovered testimony was in favor of the respondent, the proper course probably would be to hear the appeal upon the original testimony ; and if the decision of the court below was found to be erroneous and was reversed on that ground, to ask the appellate court, instead of proceeding to make a final decree, to remit the cause to the vice chan-

cellor with permisssion to the respondents to apply to open the rule for closing the proofs, so that the newly discovered evidence could be introduced before a final decree was made; or, that after the reversal of the decree by the chancellor, the cause should be retained before him for a final decision therein, with a similar permission to the respondents to apply to open the proofs and introduce the new testimony previous to such final decision. But as I came to the conclusion that the decree of the vice chancellor upon the original testimony before him was not erroneous, it became unnecessary for me to decide the question whether such newly discovered evidence could be received upon the hearing of the appeal, where both proceedings were in the same court but before different officers thereof. And when the cause came before the court for the correction of errors, in December, 1835, on an appeal from my decision affirming the decree of the vice chancellor, the same question was raised and discussed there. That court, upon the final decision of the cause, and after fully considering the question, adopted a resolution of which I have a manuscript note: " That on an appeal from a vice chancellor the cause is not before the chancellor in the nature of a re-hearing, but is an appeal strictly; and on such appeal no other evidence or pleadings can be received than were before the vice chancellor." This decision of the court of dernier resort disposes of that part of the present application which relates to the introduction of new testimony to be used upon the hearing of the appeal.

The affidavit on the part of the complainant leaves it doubtful whether the respondents have any lien upon the premises in controversy which can entitle them to a support out of any part of the proceeds of the land if it should be sold. And it also appears that the applicants are in the receipt of between one and two thousand dollars yearly, for the rent of a portion of the premises, which ought to be applied in the first place to pay taxes and assessments upon other portions of the property pending the litigation. While the decree of the vice chancellor remains unreversed, I must take the complainant to be the legal as well as the

equitable owner of the property, subject only to the pay-
ment of such liens thereon as the appellants may hereafter
establish before the master upon the reference. It would
therefore be contrary to every principle of justice to order
his property to be sold, either for the support of the appel-
lants or to pay assessments on the land, while they are
wrongfully retaining the possession from him, and applying
the rents and profits to their own use. And as both parties
have an equal right to attend at the corporation sale and
prevent the sacrifice of any more of the property than is
necessary for the payment of the assessments and expenses,
and ample time is given for the redemption of what is
already sold, there is no necessity which can justify the
court in exercising the extraordinary power of ordering the
property to be sold, to save it from being lost pending the
litigation; especially in a case where the party who is pre-
sumptively entitled to the property under the decree of the
vice chancellor is unwilling to consent to a sale.

The whole of the appellant's petition must therefore be
denied with costs.